All right, you're eating, you're eating, you're eating. This honorable public court. The second district is now soon to adjourn. You can be seated. Thank you. You're honest. The second case of the afternoon Good afternoon, Mr Reinhart. May please the court. Good afternoon. On July 2008, Mr Walker entered into a unprecedented stipulation that led to his indefinite confinement. And from a common sense perspective, possibly for the rest of his life. That stipulation is not a stipulation. Stipulations have. There's no stipulations that are really discussed in reviewing courts. There's no cases directly on point that discuss such complete and total stipulations. That stipulation was not authorized by the statute is not authorized by due process clauses of the Illinois or the United States Constitution. Any case law that says that a respondent cannot stipulate in this proceeding? No, sir. Then why would we find that it's? I think that it is a matter of first impression for the reasons stated in my brief. Our brief is, I think, violative of public policy. It puts I think that one of the allegations by the state in these sorts of cases is some sort of mental disorder, some sort of mental illness. Obviously, I'm not making the point that Mr. Walker was insane or unfit, but it is something for the court to consider when it is thinking about the public policy aspect of that. As we saw in Michael H. and I think Johnson discussing the Mental Health Code, the court was very willing to look into the reasons behind the Mental Health Court Act behind the involuntary commitment proceedings and say that total stipulations were not appropriate. Are you suggesting that if the defendant is suffering or the respondent is suffering from some infirmity, that he would be considered capable of involuntary stipulation? I'm suggesting that in sexually violent person cases, total stipulations of this nature are unwise. They are. They might be unwise and they might not be what you prefer, Mr. Reinhart, but in this particular case, didn't the judge admonish him thoroughly? And he did not seem to be one who misunderstood or could not understand what she was saying. He agreed to everything. It appeared as though based upon the record and transcript that the attorney was explaining to him as well. So I understand what you're saying, that he might have a mental issue, but you're looking at a mental disease or disorder that would cause him to act out sexually. Yes, certainly that is the type of mental disorders that are alleged in these types of cases, but frequently there are comorbid conditions. With respect to that, I think that's more of an issue of whether or not total stipulations of this kind are wise. But I want to answer your question, respectfully, the admonishments were not thorough enough in this case. There is not a thorough discussion or any type of discussion, for example, regarding the Section 40 proceedings. There's no description whatsoever in the transcript of the hearings, in the stipulation signed by the parties, or in the agreed order entered by the trial court that talks about what a Section 40 hearing is. In my brief, I analogized, and there do have to be analogies in this case. In my brief, I analogized to a sentencing hearing where nobody informs the defendant of what his sentencing range is. Not once in this case did the trial court talk to Mr. Walker about what a Section 40 hearing was. A Section 40 hearing is a dispositional hearing in which the trial court, on its own, without a jury, must look at essentially his life, certain factors that are laid out in the statute, and decide whether he is to receive secure confinement or conditional release. Let me ask you this. Aren't these proceedings have always been considered to be civil in nature? They obviously are civil in the express language of the statute. Correct. But they have the due process protections. They have the due process component, but is it fair then, because they're civil in nature, to import all of the general criminal due process laws into a civil act? Is there authority for that? Yes. I think that in the sexually dangerous person's context, we have Treanor, we have Samuelson. Many of the cases talk about the massive curtailment of liberty which occurs during these civil commitment proceedings. Masterson talks about it. Masterson, I understand, is an SDP case. But there is no doubt that every single SDP, SBB case says that there are these due process protections. And I think that... Well, due process is a continuum, though, right? Absolutely. So there are some degree of protections that are warranted, some degree that he should have in a civil proceeding. A criminal case, obviously, would take it to the greater extreme, right? Yes. Yes, Justice. And for the most part, my analogies, for example, to a guilty plea, have more to do with providing the court with some framework to think about what his total stipulation is. You keep saying a total stipulation, but the stipulation wasn't to the extent that it prohibited the judge from considering how to ultimately dispose of the case, right? The judge certainly had options. Yes, under Section 40, she has options between... Conditional release. ...between conditional release and securing confinement. So I say total stipulation sort of in the context of Section 35. It's probably better for me to say a total stipulation regarding Section 35 or, I guess, Section 5, that defines sexually violent persons. So in that regard, it really is a factual stipulation. Well, it's certainly a legal conclusion that he's under the jurisdiction of the actor that he is legally defined as a sexually violent person, at which point the court only has two options under Section 40. Really intensive conditional release, which it's not just a sex offense, right, that gets you put back into secure confinement. It's potentially any violation. Certainly, I think courts are reasonable in this regard, but if he stays out past his curfew or if he goes to a place he shouldn't, that is a violation and can instantly lead to indefinite secure confinement. It's even more onerous in that way than parole, because a parole violation still has to... there still has to be a term sentence. If you violate parole in the criminal context, you go back to the Department of Corrections... What was the prayer for relief that was specified? Do you know in the petition here? What was the prayer for relief that was specified?  In the petition, in this case. Mr. Walker's filed a lot of petitions, and in this particular one, the stipulation, he signed the stipulation saying he waives his right to have the people prove that he's a sexually violent person beyond a reasonable doubt, correct? He did, absolutely. So what did the people ask for in the prayer for relief? They asked that he be securely confined under, I think, Section 15 until there was a dispositional hearing. Right, and they stated in the stipulation that the respondent is committed to the custody of the controlled care and treatment in a secure setting until his dispositional hearing. And the stipulation, I believe, was, what, 15 points long? And when Judge Rossetti asked the defendant, Has anybody forced you, threatened you? Do you understand? Do you have any questions? Do I need to go over this more with you? Do you understand that you could testify to blah, blah, blah? I mean, she really gave him some detailed admonishments, and that stipulation was extremely detailed, wasn't it? It wasn't. It was detailed with respect to what Quackenbush and Wood would say, but it was not detailed at all respectfully, Justice. It was not detailed with respect to what a Section 40 hearing is. As a matter of fact, it's slightly misleading, right? Because under Section 15, you are confined. What they're telling you is that you're at DHS until we do our Section 40 hearing. But it's actually slightly misleading because, and Mr. Walker actually alleged, he actually alleged in one of his motions that appointed counsel, appointed trial counsel, told him that he would only be securely confined until the dispositional hearing. So when you get to the dispositional hearing, you've been securely confined, and then the trial court decides between conditional release and secure confinement. But Mr. Walker alleged that his actual appointed counsel told him  Well, we're picking and choosing what parts of the record we want to argue, what parts we don't. As I understand the case, and you can tell me if I'm missing something here, the stipulation states, quote, And when the judge asked him if he understood it and he had any questions, he said yes and no. So what are we to make of that? Well, I think one argument in this appeal is whether stipulations should be permitted. They're certainly not expressly authorized under the Act. But the thing it says they are not, and it's civil in nature, so I think the weight of authority and logic would say they would be because they're authorized, and this is civil in nature. Yeah, but respectfully, Justice, Michael H., in the Mental Health Code context and People v. Johnson, expressed serious, and these were actually cases pointed out by the government, expressed serious concerns about such total, about such stipulations. And as a matter of fact, in People v. Michael, or N. Ray, Michael H. Excuse me, I've been saying that wrong. N. Ray, Michael H., they actually said you couldn't do a total stipulation, even though it wasn't expressly prohibited in the statute. And in Johnson, the only reason Mr. Johnson's confinement was saved was because he only did a stipulation to testimony as opposed to the final conclusion. But it's not just, I don't, the point of this appeal is not only the problems with doing a stipulation or with the trial court's admonishments, but it's important to remember that Mr. Walker stipulated to Quackenbush and Wood testifying that paraphilia, not otherwise specified, non-consent, could be the basis of his confinement. By November of 2008, three months later, he alleges that he discovered that there were serious scientific questions about paraphilia, not otherwise specified, non-consent. And that's exactly what we see in New, Melcher, and Hayes, that serious question. So when Walker discovers that problem, when Walker discovers that problem, he files a motion to withdraw stipulation. And it is at that point that respect for admonishing the trial court's errors significantly began to compound. There was no evidentiary hearing on that motion, ever, to this day. The government consistently points out that somebody arguing to vacate a stipulation must show that facts were untrue. How in the world would Mr. Walker have done that when there is not an evidentiary hearing? Appointed counsel did a good job of requesting an evidentiary hearing. He set it in the record, and the trial court said no. So under Ellis, which is the case the government pointed out in this court, under Ellis, the movement must show untrue facts. Facts. How would he do that without a hearing? There was no hearing in this case on his motion to withdraw. As a matter of fact, the trial court said it was untimely. What does that mean? Let me interrupt you. You've alleged, I think, like seven different arguments here on why we should reverse the trial court. So we talked about the stipulation. I'm going to give you an opportunity to address to us which issue you think is important. Should we talk about prior hearings? Should we talk about the unconstitutionality of Section 40? Should we talk about ineffective assistance of counsel? You tell me. I appreciate that, Justice, and it is obviously there are a lot of issues in the brief. There are. I think that the most important discussion today is how Mr. Walker, in a relatively timely manner, sought to both attack that stipulation and have ineffective assistance of counsel with respect to that attack. And how is counsel ineffective for stipulating? Well, that's certainly one of our allegations. There is no strategic value whatsoever to this stipulation. Zero. It's not a Washington versus ‑‑ excuse me, of course it is Washington versus Strickland. They are not. Of course. But the second prong regarding prejudice isn't applicable here because of Koslowski and Ray's commitment of Dodge, which said when there is no adversarial testing, the second prong is not applicable. So a total stipulation seems and is completely lacking in strategic value. The only time the government has been able to point to any value to this total stipulation is some vague comment that supposedly Mr. Walker alleged or stated at some point that a point of counsel told him he'd get a different evaluator. He'd get a different what? He'd get a different evaluator if he stipulated. That makes no sense. If a point of counsel did say that to Mr. Walker, it makes no sense. If Mr. Walker is misremembering how that conversation went, it still doesn't say the lack of a strategic value in this case. The primary way that this Court is able to see an effective assistance of counsel is only through the stipulation. And the reason I can't be more specific is because there were no crankle hearings. Not one. Was that necessary? Absolutely. Why? Do you have cases that say crankle hearings are authorizing civil cases? No, Justice, but it is a massive curtailment of Mr. Walker's liberty. The liberty interest at stake could not be more greated for Mr. Walker. So if you have a right to effective assistance of counsel, which that has been applied to the SDP Act, if you have the right to effective assistance of counsel, why wouldn't you have a contemporaneous method to enforce that right? Are there any Illinois cases that say that crankle hearings apply outside of criminal cases? No. But how can you have a right to effective assistance of counsel without crankle hearings? So you want us to be the first to say this? Is that what you're saying? Respectfully, if that's how it comes out, yes. How can there not be a right to crankle? It's an accompanying right. In Vargas, Vargas is fascinating, right? In Vargas, it was... Go ahead, Edith. Thank you. In Vargas, Mr. Vargas's concerns come up in an allocution. In an allocution, at the very end of the case, quite informally, he says, counsel didn't work for me, counsel didn't investigate. And Vargas's case is remanded because there was no interchange whatsoever, even at the allocution stage. You can certainly imagine how a trial court would say, well, we're in an allocution stage. He's sort of getting things off his chest. That's not what happened. The appellate court said, you have to do a crankle hearing. Same thing in Moore. Those are all criminal cases. They absolutely are, Justice, but with Mr. Walker being securely confined and with him having a right to effective assistance of counsel, it seems that if there is possible neglect, and that's a very low standard. You just hit the magic words. Would you agree, clearly there is no right to a crankle hearing in a criminal case. Is there a right to a crankle hearing? Or is there a preliminary threshold finding that the court makes before you get to a crankle hearing? I may be using it a bit informally. I think you're jumping ahead. You're saying there's a right to a crankle hearing. A attorney just can't step up and say, Judge, we want a crankle hearing after the verdict's in. There's a wait a minute. What's the possible basis for neglect, right? Yes, Justice, I've probably been speaking a little informally about it. There must be a possible, if there is possible signs of neglect, the trial court should have an exchange with the defendant, with trial counsel, to determine if new counsel is necessary. But that's a very low standard. That's certainly not Washington v. Strickland. On May 28, 2012, the trial court applied Washington v. Strickland to answer Mr. Walker's claims of ineffective assistance of counsel. The court didn't go to a crankle analysis. It went to Washington v. Strickland. Because there was no authority for a crankle. That's why the court didn't go to it. If there's a right to effective assistance of counsel, there must be a right to talk about it in the trial court. That must be true because there is no other way to enforce that right at that stage. And now we're wondering what was really happening in these facts surrounding the stipulation and the motion. One final question on the motion. What's the prejudice to the defendant? You're saying that, but for the stipulation, the trial court could not have conducted dispositional hearing pursuant to Section 40. What was the prejudice that it proved to the defendant by the stipulation? Well, certainly, this goes back to Witherspoon. It's important to note that Witherspoon is a defense expert who actually testified in Emory v. New. Witherspoon testified that there were, or Witherspoon opined in a report, that there were significant problems with Wood and Quackenbush's theory. And so what needs to happen is there needs to be a vigorous testing of Wood and Quackenbush's theory, Wood and Quackenbush's opinions under Section 35. So the way that he was prejudiced was, I'm sort of left with Kozlowski and Dodge. There was no adversarial testing whatsoever under Section 35. And so it's hard to point to the prejudice, but it seems that a vigorous testing of the state's opinions at the Section 35 stage would be necessary. Well, there's no meaningful testing because it was a stipulation. Couldn't you make that argument every time counsel is there and the defendant makes a guilty plea? There's no meaningful testing of the case? You'd always make that argument, couldn't you? Of course, but it's always very clear. It should be very clear what the strategic reasons were. You answer a plea because they removed the gun. Because they removed the gun enhancements. You might turn into a plea so that they don't charge you with first-degree murder and you enter an open plea on second-degree murder. There is almost instantly a clear strategic benefit to a guilty plea. So kind of in the eye of the beholder. I mean, it is not always evident what that strategic value is in a guilty plea. Justice, I agree with that. I think in the post-conviction context or the ineffective assistance context, there is always some final statement by the reviewing court about what the strategic value was. I continue to be at a loss. I think there's always some identification process that occurs about what that value was. I continue to be at a loss about what it was in this case. Sometimes it's just merely the thought that, hey, if I do plead guilty, the judge will be more lenient. It's as simple as that, right? Yes, but his mindset or his mental history or his mental attitude is already being, in this kind of case, is being very vigorously tested and poked at. So he's either contrived about what has happened in his life or he's not. It doesn't really have anything to do with Section 35. All right, thank you. Oh, thank you. Thank you very much. Chief Reinhart, you'll have time for rebuttal. Thank you very much, Justice. Is it Dorsch? How do you pronounce your last name? Dorsch. Dorsch, okay, thank you. It's Dorsch. You may proceed. I'm sorry, I have a bit of a cold and a little bit of hearing problems, so if I start talking, I'll be pleased to. Okay, if you could talk into the microphone, that would help. Thank you. You may proceed. I want to back up a little bit and talk about how this all began. In 2007, as Respondent is nearing his release, his projected discharge on MSR, he's evaluated by the IDOC expert who finds that he's an SVP. The people file a petition seeking his commitment under the Act, and the DHS expert evaluates him and says he's an SVP. Respondent then hires an expert of his own, choosing Dr. Barrett, and then saying that that expert also finds that he's an SVP and should not be released. So at that point, in light of this unanimity of the expert opinion, what was trial counsel to do? It's entirely reasonable of counsel to recommend, as a matter of strategy, to stipulate to the elements that he is, in fact, an SVP. His own expert diagnosed him as SVP? Pardon me? His own expert diagnosed him as SVP. His own expert? Yes, yes, his own expert. His letter, Respondent put that he filed the letter as an exhibit, the letter to counsel from Dr. Barrett said yes, that he's an SVP. So we know this, even though typically in a situation like that, we would be left to guess, you know, basically assume because the expert didn't testify that he must have said that, but we know because Respondent included that letter in the record saying he was an SVP. So in light of this unanimity of opinion, counsel was entirely reasonable in recommending to his client that, okay, the cards are on the table, we're not going to win on the elements, on the adjudication phase, let's get a different expert, hope he'll come up with some different opinion, let's go for conditional release. So it was his trial strategy, if you will? I'm sorry? So it was kind of his trial strategy, if you will? Well, trial strategy? Certainly you could. I mean, you can argue it was his strategy, he was going to try and minimize or do what he could with what he had. Right, exactly. It's a matter of strategy. Plus, if he's trying to get conditional release, perhaps a different expert, he's entitled to a different expert for disposition if he'd like. Perhaps a different expert would have a different opinion on the disposition issue. Plus, he could advance the proceedings, rather than go through all the pretrial process, go ahead, go right to the disposition and advance. Either if you're committed, then you work on getting out, you go to treatment and you work on getting out, or maybe the judge will give you CR. So that's evidently his strategy here. Or like Justice Spence suggested, maybe you're suggesting to the judge that you're amenable to treatment. Okay, I agree. I'm an SVP and I'm willing to do what you want. In fact, the respondent, after the adjudication, after the stipulation, said, Judge, here I am, do with me what you want.  Let's address some of the issues that Mr. Reinhart addressed with respect to, let's talk about a Crankle hearing. Okay. Crankle is a common law procedure that the Supreme Court created. I would suggest that only the Supreme Court could probably extend it to SVP proceedings. It's never applied anywhere outside of the criminal context. But even if we do apply it, I'm willing to say that we can. There were four dates that were offered by a respondent. The first one wouldn't apply because even under Crankle, it was pre-adjudication, so it falls outside the scope of Crankle. So the second one is an August 2009 hearing on his previously filed motion to go pro se. Really, there were no allegations of ineffective assistance per se that one could recognize. Now, here I want to back up again and say, once the respondent did go pro se, he tended to file a lot of documents, attachments, et cetera. So the judge was always trying to confine the analysis to the actual document, the pleading that he had filed, sort of keep things moving in an orderly fashion. But at that hearing, the respondent said, I'd still like to go pro se. He had previously filed the motion to go pro se. And so Judge Rossetti was advising him and admonishing him, you know that you have a right to attorney. The typical admonishments akin to what one would go through in a criminal case. And when she said, I have a right to attorney, you have a right to attorney, do you understand that? He said, yes, I'd like an attorney. She said, well, you have one. Do you understand that? And he said, yes, but I don't feel he's represented me to the best of my degree, or I would not be at this point in this particular moment. And then they went through. The judge, we can't fault the judge for not recognizing that as a post-trial allegation of ineffective assistance. Do you find any cases in the state that says that a crankle hearing is applicable in civil proceedings? No. Do you find any cases anywhere that says that? Do you find any cases anywhere that says that? No. As far as I know, this isn't the case. Wouldn't it be better to address concerns about counsel's performance then than wait until the issue comes up on a collateral attack? Is there some benefit to doing a crankle hearing then when the issue is fresh in counsel's mind? Yes, it's probably true. It's probably better. But Judge Rossetti did address. So I'm just arguing that with respect to this hearing and the motion to go pro se, that you can't fault it really for, A, considering that in the context, given that it falls in the context of this colloquy about discharging counsel, that we should recognize it as a post-trial allegation. Also, the fact that all he said was that basically he's saying, well, he must have done something wrong. He must have been ineffective, or I wouldn't be here. I wouldn't be an SVP. And that's just simply not enough to warrant a further inquiry. Let me ask you a question that deals with what I think is the overarching theme of the entire defense argument. The respondent, I think it's fair to say, is attempting to import protections that are afforded to criminal defendants into civil commitment proceedings. Yes. That is the theme that runs through these points. There are statutory rights accorded under Section 25. Can you make it, does the due process clause require more protections in a case such as this where there's involuntary commitments versus the average civil case? I know the knee-jerk reaction is, hey, it's civil. You know, generally we don't apply these. But here there's an issue of confinement, which you don't get in the average civil case. So is there a point to importing some of these due process requirements? Yes, there is. There probably is. There's a problem here. In this case, the issue has not been briefed for this court because respondent simply assumes the application of these criminal proceedings and doesn't engage in any kind of analysis. It doesn't cite any authority for it, right? Pardon me? It doesn't cite any authority, right? There's no, so typically if you're trying to figure out what due process requires outside of, you would engage in the master, look at the, oh, the Matthews factors. And you do that balancing test and you determine if it's just expensive. Where in the continuum of due process, what does due process require in these proceedings based on, you know, those Matthews balancing factors? And respondent simply didn't engage in that sort of analysis. Simply just assumed the application of these criminal precedents and procedures in this case. Okay. Here, Mr. Reinhardt also indicates that there should have been a fried hearing in this particular case. Do we have some cases that guide the court in whether or not frightening is necessary in a sexually violent person case? Yes. You're looking just for cases on pride. Obviously, our Supreme Court is going to hear argument in redetention of new, probably will be held this fall. That's an appeal on the first district that held that the paraphernalia NOS diagnosis is subject to fry. Other panels, however, of the first district, other divisions of the first district held, while subject to fry, it's generally accepted and, therefore, no. That same diagnosis is generally accepted and, therefore, no fry hearing is necessary. So those cases of the first district that say generally accepted, Lieberman and then more recently Melcher and Hayes. Melcher and Hayes. Yeah. They're saying it's not necessary. There's no support for the proposition that fry hearing is necessary with the paraphernalia. Correct? Fry hearing should not be necessary because fry applies to methodologies, and the diagnosis is not a methodology. It's something that the only methodology in use here is when Dr. Wood connected a clinical interview with respondent and then reviewed his records and applied the actuaries, et cetera. But it's not a methodology. That's our position here and in our brief review as well. Any further questions? Thank you. Thank you. Mr. Reinhart. Thank you. Due process clause applies to sexually violent person cases. In writing the commitment of Dodge in 2013, this court said that respondents under the Sexually Violent Persons Act have a right to effective assistance and counsel. So it reminds me a little bit of a selective incorporation from constitutional law that we can think about what rights have been applied to the Sexually Violent Persons Act. And I can go through all of them, trial, et cetera. But once I point out Dodge, we have a right to effective assistance and counsel. It must flow from Dodge that you have to have a contemporaneous analysis of counsel's effectiveness. It must flow from that. Otherwise, we have no record whatsoever on what was going on regarding this stipulation. Mr. Walker's allegations are serious. My opponent pointed to the August 2009 allegation. That's not his most serious allegations. In June of 2012, he alleged that appointed counsel had essentially coerced him into this stipulation, that appointed counsel had essentially not explained to him anything that was about to happen. Importantly, appointed counsel had not obtained a competent defense expert. My opponent refers to Dr. Barron and Justice Hudson. You asked about defense experts believed to use SVP. How is that not an effective assistance of counsel? But Dr. Barron isn't listed on the SOMB guidelines. Witherspoon is. Why didn't counsel bring in Witherspoon earlier? Why not consult the two experts? There's many ways that counsel could have been effective. Well, if you're looking for effective assistance of counsel, as you indicated before, it's a Strickland standard. You're entitled to counsel. You're not entitled to perfect counsel. You're entitled to effective counsel. Effective counsel. So you're making arguments that why didn't he do this? Why didn't he do that? Did he have to do all of those things? And the fact that he didn't do those things, does that rise to a level of ineffectiveness? I don't know because there wasn't a crinkle hearing. The problem in this case is that I'm not alleging in a post-conviction petition the ten different ways that counsel was ineffective. My brief actually only points to one way that he was ineffective technically, which is the entry of the stipulation. Put that aside. All of the claims that Walker makes contemporaneously could be ineffective assistance of counsel. Under Moore and Vargas and Crankle, the standard is possible neglect. I can't prove my ineffective case because I don't know that counsel was ineffective because there wasn't a Crankle hearing. Because there was no contemporaneous analysis of what was going on. Why wasn't the motion to withdraw stipulation filed earlier? Why wasn't Witherspoon called during the motion to withdraw stipulation? What was the exact nature of the investigation prior to the stipulation? This court and myself can't answer those questions because there was no Crankle hearing. And the problem in the case is that, respectfully, the trial court didn't ask one question of counsel about the allegations. So once we get to an effect that you have a right to the effective assistance of counsel through Dodge and the due process clause, then Crankle flows from that. So I don't think there's any question that due process applies. I don't think there's any question that the effective assistance of counsel applies under Dodge. So I think, respectfully, Justices, there is a case that applies due process to SVP hearings. But Masterson, Treanor, all of these cases talk about the importance of due process and the liberty interest at stake. Mr. Walker's interest could not be higher at this point. And for the court not to figure out what was going on between him and counsel is exceedingly problematic. And I have to point out, and I am making an analogy to criminal cases because we don't have any SVP cases. And if we don't have any SVP cases, then we sort of have to go to the criminal cases. But under Wilk and Spriggle, which are cited in my brief, there needs to be a meaningful hearing on any type of motion to withdraw a plea. And I acknowledge those are motion to withdraw plea cases. But the government has pointed out that under Ellis, the question is, are there untrue facts? So even under pure civil case law, the question becomes, are there untrue facts? And the trial court, despite a point of counsel's request, did not have a meaningful hearing on what Witherspoon was saying. It must be noted that Mel Tarchage and New are all raising questions about precisely what Quackenbush and Wood said. This was a serious allegation that Mr. Walker was making. This isn't a technicality or anything like that. The very thing that this court is grappling with, with paraphilia not otherwise specified, non-consent, was identified by Witherspoon in 08. So Walker had a right to a meaningful hearing on that issue once Witherspoon identified it. Anything further, gentlemen? No. Thank you very much. We respectfully request that the stipulation be vacated or that the proceedings be remanded for crankled proceedings and a meaningful hearing on the motion to withdraw. Thank you. Thank you, Mr. Reinhart. Thank you, counsel. Both of you, thank you so much for your time and your interesting arguments. This case will be taken under consideration and a decision will be rendered in due course. I'm happy to say the court is adjourned for the day.